UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

---

**MARCUS ANTHONY HARDMON**          **CASE NO.: 5:17-CV-01118**

**VERSUS**                          **JUDGE ELIZABETH FOOTE**

**U.L. COLEMAN**                    **MAGISTRATE JUDGE HAYES**

---

## MEMORANDUM RULING

Now before the Court is a Motion to Dismiss [Record Document 15] filed by Defendant U.L. Coleman who seeks to dismiss this suit pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(5), and 12(b)(6). Plaintiff Marcus Hardmon has filed an Opposition. [Record Document 17]. For the reasons discussed below, Defendant's Motion to Dismiss [Record Document 15] is **GRANTED**.

## BACKGROUND

Plaintiff Marcus Hardmon, appearing *pro se*, filed a complaint in this Court under Section 706(f) of the Civil Rights Act of 1964. Record Document 1. Plaintiff filed his complaint using a pre-made form for *pro se* litigants who seek to file Title VII claims. The complaint itself contains very little information. Aside from his signature, date, address, the name of the defendant, and the signatures of two witnesses, the only information Plaintiff provides is that he filed a charge with the Equal Employment Opportunity Commission ("EEOC") and that the EEOC sent him a "right-to-sue" letter. *Id.* Plaintiff left blank the sections of the form where he was directed to describe the employment practices about which he was complaining and identify the relevant parties, indicate whether he disagrees with the EEOC's finding in his case, and give any other relevant information. *See id.* Plaintiff included twenty-four pages of attachments with his complaint. Record Document

1-2. These attachments include a Louisiana Commission on Human Rights intake form (pp. 1–6), several pages of text that appear to be a narrative written by Plaintiff about the incidents of which he complains (pp. 7–15), information from several different websites about legal drugs that can cause a positive drug test for THC (pp. 16–20), and a document entitled "Dismissal and Notice of Rights" from the EEOC stating that it was closing its file on this matter and giving Plaintiff a right to sue (pp. 21–24). *See id.* Plaintiff alleges that he was discriminated against because of his race, sex, age, and religion. *Id.* at 2.

As best the Court can tell from Plaintiff's attachments to his complaint, he was the maintenance supervisor at Northgate Square Apartment[1] in Bossier City, Louisiana when his employment was terminated. *Id.* at 1–2. Plaintiff states that his employment was terminated on November 24, 2015, because of "an alleged failed drug test." *Id.* at 7. He claims that the failed drug test was in error and that he passed a second drug test later that same day. *Id.* Plaintiff contends that certain legal medications he was taking to treat headaches and allergies caused him to test positive for THC. *Id.* at 13. Furthermore, Plaintiff claims that his supervisors knew he was taking these medications and that he needed to take them because he had been working in apartments that contained black mold. *Id.* at 3, 8, & 13.

Plaintiff's main argument appears to be that his termination represents an unfair employment practice. He is black and is aware of a similarly situated white employee who either failed or refused to take a drug test. *Id.* at 7. Plaintiff explains that a white employee, Matthew Thomas ("Thomas"), hit someone's Corvette with his truck in 2015 and refused to go to "work

---

[1] In the administrative documents he provides, Plaintiff lists Northgate Square Apartment as his employer. However, in the narrative of events that he provides, Plaintiff refers to his employer as U.L. Coleman without explanation for the change.

care"[2] because he knew he would fail the drug test. *Id.* at 10. Plaintiff claims that Thomas told other employees on multiple occasions that he smoked marijuana and did cocaine, and that he had a relationship with maintenance director Jeff Roach ("Roach"). *Id.* It appears that Thomas was initially fired because of this incident, but Plaintiff states that Roach got Thomas his job back shortly thereafter. *Id.* Plaintiff also claims that he was replaced by a younger, white employee named Mike, who was close with Plaintiff's supervisor Lindsay Caldwell ("Caldwell"). *Id.* at 15. According to Plaintiff, Caldwell intentionally did not report an incident where Mike jumped from a ladder and hurt his leg at work, so that Mike would not have to go to "work care." *Id.* Finally, Plaintiff claims that U.L. Coleman applied fees and provided services to tenants in an inconsistent manner based on race and that U.L. Coleman did not hire black managers because "Mr. Coleman does not trust a black manager to be over his apartment complex . . . ." *Id.* at 11 & 14.

Plaintiff also makes several complaints about his working conditions and injuries he sustained on the job. He complains that he had to use his personal vehicle to drive around the apartment complex even though the other twelve properties had golf carts. *Id.* at 2 & 13. Plaintiff claims that he had to work in apartments that contained black mold and was "brushed off" by management when he raised health concerns about the mold. *Id.* at 3. He had to miss work on November 11, 2015, because his eyes and nose were swelling due to his allergies. *Id.* at 8. He returned the next day and informed his supervisors that he would be taking allergy medication to treat the swelling. *Id.* He also informed Caldwell that his eyes had been swollen and burning more since he had been doing work in apartments with black mold in them. *Id.*

---

[2] From the information Plaintiff provides, it appears that employees are required to go to "work care" and take a drug test after they have an accident on the job. *See* Record Document 1-2, pp. 10, 14, & 15.

On November 20, 2015, Plaintiff cut his left ring finger while replacing a sink drain in one of the apartments. *Id.* Plaintiff states that since this injury, he has had trouble pulling, climbing, lifting, carrying things, and scratching, that he has sharp pains and numbness from his finger tip to his shoulder, and that he may never be able to wear his wedding ring again. *Id.* at 3. On November 23, 2015, Plaintiff was moving a stove at work when he injured his left shoulder and lower back. *Id.* at 9. It appears from Plaintiff's narrative that his employment was terminated when he failed a drug test following this incident. *See id.* at 14. Plaintiff states that he can no longer lift his left arm over his head, has trouble dressing, and performs tasks slowly because of the pain and stiffness in his back and shoulder. *Id.* at 9. He also states that since he has been fired, doctors will no longer see him to treat his finger, back, or arm. *Id.*

Defendant U.L. Coleman filed the instant motion to dismiss, claiming that Plaintiff has failed to effect proper service, failed to exhaust his administrative remedies, and failed state a claim upon which relief can be granted. Record Document 15. Defendant claims that Plaintiff has failed to perfect service in accordance with Federal Rule of Civil Procedure 4. Record Document 15-2, pp. 10–11. Defendant argues that this Court does not have subject matter jurisdiction over Plaintiff's claim because Plaintiff has failed to exhaust his administrative remedies as required under Title VII. *Id.* at 13. Finally, Defendant claims that Plaintiff has failed to state a claim against U.L. Coleman because he fails to state the elements of a *prima facie* Title VII claim and because he fails to make claims against U.L. Coleman personally.[3] *Id.* at 15–16.

---

[3] Defendant argues that Plaintiff has sued an individual, U.L. Coleman, but has failed to make any allegations relating to him. Record Document 15-1, p. 16. This ruling does not address whether Plaintiff intended to sue U.L. Coleman as an individual rather than the business entity known by that name.

## LAW AND ANALYSIS

Although Defendant has brought motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(5), and 12(b)(6), this ruling will focus on the motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

1. **Lack of Subject Matter Jurisdiction**

Defendant argues that Plaintiff's claims should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction because Plaintiff has not exhausted his administrative remedies. Record Document 15-1, p. 12. Defendant claims that when a plaintiff has not exhausted his administrative remedies, a federal court does not have subject matter jurisdiction over a Title VII case. *Id.* at 13. The Court acknowledges that Plaintiff is required to exhaust his administrative remedies against U.L. Coleman before he can pursue an employment discrimination claim in federal court. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002). However, the Court does not agree with Defendant's position that a failure to exhaust administrative remedies represents a jurisdictional issue.

Fifth Circuit case law contains conflicting authority on the question of whether the exhaustion of EEOC administrative remedies is a jurisdictional issue in Title VII cases. *Baker v. McHugh*, 672 Fed. App'x 357, 369 (5th Cir. 2016). Defendant acknowledges this conflicting authority and concedes that this Court may choose to address the exhaustion issue under Rule 12(b)(1) for lack of subject matter jurisdiction or under Rule 12(b)(6) for failure to state a claim. Record Document 15-1, p. 13 n.2. The most recent Fifth Circuit decisions on this matter have held that Title VII's exhaustion requirement is not a jurisdictional requirement but merely a precondition to filing suit. *Davenport v. Edward D. Jones & Company, L.P.*, 891 F.3d 162, 169

(5th Cir. 2018); *Stroy v. Gibson ex rel. Dep't of Veterans Affairs*, 896 F.3d 693, 698 (5th Cir. 2018); *Baker v. McHugh,* 672 Fed. App'x 357, 361 (5th Cir. 2016). At this stage of the proceedings, the Court will analyze the administrative exhaustion issue under Rule 12(b)(6).

   **2. Failure to State a Claim Upon Which Relief Can Be Granted**

   a. 12(b)(6) Standard

In order to survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. The court must accept as true all of the factual allegations in the complaint in determining whether plaintiff has stated a plausible claim. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). If a complaint cannot meet this standard, it may be dismissed for failure to state a claim upon which relief can be granted. *Iqbal*, 556 U.S. at 678–79. A court does not evaluate a plaintiff's likelihood for success, but instead determines whether plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). A dismissal under 12(b)(6) ends the case "at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558.

b. Title VII Exhaustion

A Title VII plaintiff exhausts his administrative remedies when he files a timely charge with the EEOC and receives a statutory notice of the right to sue. *Taylor*, 296 F.3d at 379 (citing *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788–89 (5th Cir. 1996)). Plaintiff indicates in his complaint that he has exhausted his administrative remedies. Record Document 1. However, the documents that he submitted along with his complaint reflect that his administrative complaints were lodged against Northgate Square Apartment, not U.L. Coleman. Record Document 1-2, pp. 1, 5, & 23. The EECO issued a right to sue letter against Northgate Square Apartment, not U.L. Coleman. *Id.* at 22. In the narrative pages Plaintiff submitted, he refers to his employer as U.L. Coleman but alleges no relationship between U.L. Coleman and Northgate Square Apartment. *See* Record Document 1-2, p. 13. In his opposition to the motion to dismiss, Plaintiff fails to address this discrepancy. Record Document 17, p. 1. Rather, he merely states that he will prove that U.L. Coleman engages in discrimination, harassment, and unfairness and then in the next sentence, Plaintiff states that he worked at Northgate Square Apartment during the events of this case. *Id.* The Court cannot assume that a connection exists between Northgate Square Apartment and U.L. Coleman or that the exhaustion of administrative remedies against Northgate Square Apartment constitutes the exhaustion of administrative remedies against U.L. Coleman. As such, Plaintiff has failed to fulfill one of the preconditions for bringing a Title VII claim. *Stroy,* 896 F.3d at 698.

3. **Leave to Amend**

Because Plaintiff is proceeding *pro se*, the Court will give him an opportunity to amend his complaint in order to name a proper defendant to this lawsuit. *See Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998). Plaintiff is given until **February 7, 2019**, to file an amended complaint that names as defendant a party against whom Plaintiff is entitled to proceed under Title VII. If Plaintiff

7

fails to file an amended complaint by **February 7, 2019**, the Court will issue a judgment dismissing all claims in this suit without prejudice and will direct the clerk of court to close this case without further notice.

If Plaintiff files an amended complaint, he is advised that he must serve the amended complaint upon the proper defendant in accordance with Federal Rule of Civil Procedure 4.

## **CONCLUSION**

For the reasons stated above, Defendant's Motion to Dismiss [Record Document 15] is **GRANTED**. Plaintiff is given leave to amend his complaint and name a proper defendant to this lawsuit by **February 7, 2019**. If he fails to do so, Plaintiff's claims will be dismissed without prejudice.

**THUS DONE AND SIGNED** in Shreveport, Louisiana on this __10th__ day of January, 2019.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE